**OTSUKA PHARMACEUTICAL CO., LTD., Plaintiff,**

v.

**APOTEX CORP., Apotex Inc. and Hetero Labs Ltd., Defendants.**

Civil Action No. 14–8074 (JBS/KMW)

United States District Court, D. New Jersey.

Signed September 25, 2015

ualized inquiries would also be necessary to de-        termine standing.

Brian Ronald Zurich, Christopher P. Soper, Melissa Anne Chuderewicz, Pepper Hamilton, LLP, Princeton, NJ, for Plaintiff.

David Leit, Lawrence Bluestone, Lowenstein Sandler, PC, Roseland, NJ, Michael S. Weinstein, Cole Schotz P.C., Hackensack, NJ, for Defendants.

## ORDER DENYING APOTEX'S MOTION FOR A PROTECTIVE ORDER

JEROME B. SIMANDLE, Chief Judge

This matter comes before the Court by way of Defendants Apotex Corp.'s and Apotex Inc.'s (hereinafter, "Apotex") motion for a protective order barring Plaintiff Otsuka Pharmaceutical Co., Ltd. (hereinafter, "Otsuka") from attempting to reconvene the deposition of Dr. Graham Buckton (hereinafter, "Dr. Buckton"), following counsel for Apotex's instruction that Dr. Buckton not answer certain questions directed at aripiprazole polymorph patents not asserted in this or the related infringement actions. [*See* Docket Item 177.] For the reasons that follow, Apotex's motion will be denied, and the Court will order the limited resumption of Dr. Buckton's deposition.[1]

For purposes of the pending motion, the Court need not retrace the lengthy history of this Hatch–Waxman action. Rather, it is sufficient to note that the parties dispute, among other claim phrases, the meaning of the term "Anhydrous Aripiprazole Crystals B," and have produced lengthy submissions advancing their contrary constructions. [*See, e.g.,* Docket Items 85, 86, 87, 99, 100, & 107 in Civil Action No. 15–1716.] Apotex, for its part, relies upon Dr. Buckton for its position that "Anhydrous Aripiprazole Crystals B" should be construed " 'as defined in the specification of the '615 patent at 9:37–64,' "[2]

---

1. The Court heard oral argument upon the pending motion on September 24, 2015.

2. The '615 patent specifically states:

and specifically defined to require each of the physicochemical properties (or, characteriza- tion techniques) disclosed in subparts (6) to (11).[3] (Apotex's Br. at 3–4.) Otsuka, by con-

Characterization of Anhydrous Aripiprazole Crystals B

"Anhydrous Aripiprazole Crystals B" of the present invention as used herein have the physicochemical properties given in (6)-(12) below.

(6) They have an $^1$H-NMR spectrum which is substantially the same as the $^1$H-NMR spectrum (DMSO-$d_6$, TMS) shown in FIG. 4. Specifically, they have characteristic peaks at 1.55-1.63 ppm (m, 2H), 1.68-1.78 ppm (m, 2H), 2.35-2.46 ppm (m, 4H), 2.48-2.56 ppm (m, 4H+DMSO), 2.78 ppm (t, J 7.4 Hz, 2H), 2.97 ppm (brt, J 4.6 Hz, 4H), 3.92 ppm (t, J=6.3 Hz, 2H), 6.43 ppm (d, J 2.4 Hz, 1H), 6.49 ppm (dd, J 8.4 Hz, J 2.4 Hz, 1H), 7.04 ppm (d, J 8.1 Hz, 1H), 7.11-7.17 ppm (m, 1H), 7.28-7.32 ppm (m, 2H) and 10.00 ppm (s, 1H).

(7) They have a powder x-ray diffraction spectrum which is substantially the same as the powder x-ray diffraction spectrum shown in FIG. 5. Specifically, they have characteristic peaks at 2θ 11.0°, 16.6°, 19.3°, 20.3° and 22.1°.

(8) They have clear infrared absorption bands at 2945, 2812, 1678, 1627, 1448, 1377, 1173, 960 and 779 cm$^{-1}$ on the IR (KBr) spectrum.

(9) They exhibit an endothermic peak near about 141.5° C. in thermogravimetric/differential thermal analysis (heating rate 5° C./min).

(10) They exhibit an endothermic peak near about 140.7° C. in differential scanning calorimetry (heating rate 5° C./min).

(11) Anhydrous Aripiprazole Crystals B of the present invention have low hygroscopicity. For example, Anhydrous Aripiprazole Crystals B of the present invention maintain a water content of 0.4% or less after 24 hours inside a dessicator set at a temperature of 60° C. and a humidity of 100%. Well-known methods of measuring water content can be used

trast, submits that the phrase should be given its "plain and ordinary meaning," and argues that the term "is identifiable using *one or more* [but not all] of the testing techniques referenced in the specification[ ] ... of the '615 patent," e.g., subparts (6) to (11). (Otsuka's Opp'n at 2 (emphasis added).) In other words, the sole claim construction issue in relation to this disputed claim phrase concerns whether a person of ordinary skill in the art would understand the term to require identification through all of the analytical techniques disclosed in the specification (as advanced by Apotex), or just some of them (as argued by Otsuka). (*See* Apotex's Br. at 5; Otsuka's Opp'n at 2.)

On July 13, 2015, the generic defendants involved in these related infringement actions, produced Dr. Buckton for a deposition in relation to his claim construction opinions. (*See id.*) In connection with this deposition, counsel for Otsuka attempted to elicit Dr. Buckton's opinions on several of the generic defendants' own patents involving specific polymorphs (or crystalline forms) of aripiprazole, the same molecule recited in the patents asserted in this and the related infringement actions.[4] (*See* Otsuka's Opp'n at 3.) Counsel for Otsuka pointed, in particular, to the fact that each of these aripiprazole polymorph patents disclose that each characterization technique proves, by itself, sufficient to define and/or identify the new polymorphs—an interpretation that stands in contrast to Dr. Buckton's own opinion in the present case. Nevertheless, the line of questioning drew, in every instance, an objection on relevance grounds and an instruction not to answer. (*See, e.g.,* Buckton Dep. Tr. at 276:9–15, 279:21–22, 278:6–280:20, 290:7–11, 290:20–291:2, 291:22–292:3, 292:5–7.)

Following the deposition, counsel for Otsuka requested that the Court order the re-

sumption of Dr. Buckton's deposition for further questioning on the various aripiprazole polymorph patents. [*See, e.g.,* Docket Item 154.] Following a conference before U.S. Magistrate Judge Karen M. Williams [*see* Docket Item 171], the parties presented the issue regarding the instruction not to answer to this Court, and the pending motion followed.

█ Federal Rule of Civil Procedure 26(b)(1) provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Despite the liberal scope of discovery, Federal Rule of Civil Procedure 26(c) enables the Court for good cause to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *See* Fed. R. Civ. P. 26(c)(1) (emphasis added). Good cause, in turn, requires the movant to demonstrate " 'that disclosure will work a clearly defined and serious injury to the party seeking closure.' " *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir.1994) (citation omitted).

█ In its motion, Apotex argues that good cause exists to preclude any resumption of Dr. Buckton's deposition, because Judge Williams' Scheduling Orders limited the scope of Dr. Buckton's deposition to claim construction issues, because Federal Rule of Civil Procedure 26(b)(4)(A) confers presumptive protection against disclosure of Dr. Buckton's non-infringement theories, and because the circumstances otherwise demon-

---

**3.** Dr. Buckton specifically proposes that "Anhydrous Aripiprazole Crystals B" be defined to mean an "anhydrous aripiprazole crystalline substance having the 1H-NMR spectrum, powder x-ray diffraction spectrum, infrared absorption bands, endothermic peak in thermogravimetric/differential thermal analysis, endothermic peak in differential scanning calorimetry and low hygroscopicity at column 9, lines 37-63 of the [']615 patent and column 9, lines 34-60 of the 796 patent." (Buckton Dec. at ¶ 21.)

**4.** These aripiprazole polymorph patents specifically include: U.S. Patent No. 8,008,490 (hereinafter, the "'490 patent") held by Sandoz AG, U.S. Patent No. 7,504,504 (hereinafter, the "'504 patent") held by Teva Pharmaceuticals Industries Ltd., and U.S. Patent No. 7,491,726 (hereinafter, the "'726 patent") held by Hetero Drugs Limited.

strate that Otsuka has little, if any, genuine need for additional testimony. (*See* Apotex's Br. at 17–20.) Otsuka, by contrast, takes the position that counsel for Apotex had no valid reason to interfere with counsel for Otsuka's questioning of Dr. Buckton, and argues that counsel for Apotex obstructed Otsuka's efforts to obtain information and evidence relevant to its position on claims construction. (*See* Otsuka's Br. at 9–17.)

The pending motion presents a close question. Apotex, on the one hand, presents a reasonable argument that counsel for Otsuka has improperly sought to develop extrinsic evidence through an examination of Apotex's expert, Dr. Buckton. (*See generally* Apotex's Br.) Otsuka, on the other hand, has shown that Dr. Buckton rendered an opinion on the analytical techniques necessary to identify the polymorphs of aripiprazole disclosed by the patents-in-suit, and Otsuka has articulated why counsel's questioning aimed to probe his opinions by contrasting it with non-familial patents involving the very same molecule. (*See generally* Otsuka's Opp'n.) For the reasons that follow, the Court concludes that the testimony sought from Dr. Buckton is relevant and should have been taken subject to an objection (rather than an instruction not to answer), and that Apotex has not otherwise met its burden for a protective order. *See Cipollone v. Liggett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986) (noting that the burden rests with the party seeking a protective order).

The Court finds that the questioning about the analytical techniques necessary to identify the polymorphs of aripiprazole in patents held by three of these defendants in these related cases is relevant to testing, by cross-examination, the bases and boundaries of the opinions Dr. Buckton has offered on this subject on the aripiprazole polymorph patents-in-suit. While the Court agrees with Apotex that it is generally not permissible to require an opponent's expert to express an opinion on a subject on which the expert has

offered none, that is not the present case. In simplest terms, defendants have offered Dr. Buckton's opinion that a person of ordinary skill in the art would understand the particular aripiprazole polymorph in this case to be defined by all of the specified characterization techniques, and defendants wish to confront him with several patents in which an aripiprazole polymorph has been defined sufficiently by any *one* of the characterization techniques. Such questioning would go toward understanding the scientific basis of Dr. Buckton's opinion and give him the opportunity to defend his opinion against the implication that it is incorrect because it appears inconsistent with the terminology in these other patents regarding the same molecule. As such, this is proper cross-examination of an expert.[5]

▮ Regarding whether examination of otherwise relevant subject matter should nonetheless be precluded by a protective order, the Court examines the Rule 26(c)(2) criteria. First, the Court first no merit to Apotex's position that Judge Williams' Scheduling Orders limited the scope of Dr. Buckton's deposition, because Judge Williams herself expressly rejected this argument during the August 17, 2015 status conference. Indeed, Judge Williams stated that counsel could not "interfere or instruct the witness not to answer except for the reasons stated in the [federal] rules." (Status Conf. Tr. at 18–19.) Federal Rule of Civil Procedure 30(c)(2), in turn, provides the three narrow grounds to instruct a witness not to answer, and specifically states that a "person may instruct a deponent not to answer *only* when necessary [1] to preserve a privilege, [2] to enforce a limitation ordered by the court, or [3] to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2) (emphasis added). Counsel here relied upon no such qualifying bases, and Judge Williams' Scheduling Orders did not otherwise circumscribe the scope of Dr. Buckton's deposition.

---

5. This is not to say that Dr. Buckton, or any expert witness, can be confronted with non-suit patents that may or may not be distinguishable and be required to formulate opinions that the expert does not have. If the witness has no opinion or is unable or unwilling to explain how

the expert's opinion is distinguished from the apparent meaning of the non-suit patent terms, then he or she may so testify. Of course, if at his or her deposition the expert has no opinion, he or she will not be permitted to offer one at the Markman hearing.

■ Second, in light of counsel for Otsuka's proffer on oral argument record of September 24, 2015, the Court does not find that counsel's questioning (or, attempts to question) of Dr. Buckton on publicly-available patents amounted to a guised effort to probe the generic defendants' non-infringement positions. Indeed, much to the contrary, counsel for Otsuka appears to have elicited testimony from Dr. Buckton on the generic defendants' various aripiprazole polymorph patents, in order to critique his opinion on the ordinary artisan's understanding of the tools necessary to identify polymorphs of aripiprazole, and specifically in order to argue that, "as a matter of science, it is *not* necessary to use all available analytical techniques to characterize a given polymorph of aripiprazole." (Otsuka's Opp'n at 10 (emphasis in original).) Even more, Apotex's own brief suggests that Dr. Buckton lacks knowledge of the defendants' noninfringement position, and specifically makes plain that Dr. Buckton *"will not"* and/or "has not" provided any non-infringement opinions on behalf of Sandoz, Teva, and/or Hetero (the holders of the patents on which counsel for Otsuka attempted to question Dr. Buckton). (Apotex's Br. at 9 (emphasis in original).) Therefore, the Court finds no prospect that Otsuka is merely seeking to prematurely discover defendants' non-infringement opinions or strategies.

■ Finally, the Court cannot conclude that the record otherwise demonstrates good cause sufficient for the entry of a protective order. In that respect, the Court notes that

Apotex has not argued, much less shown, that a resumption of Dr. Buckton's deposition will, as required by Rule 26(c)(2), result in annoyance, embarrassment, oppression, or undue burden or expense. Rather, Apotex submits that Otsuka has little need for additional testimony. (*See* Apotex's Br. at 19–20.) Nevertheless, the Court credits Otsuka's own position on the impact of counsel's instruction not to answer on its ability to elicit deposition testimony that it contends is directly related to its claim construction position[6] (*see* Otsuka's Br. at 11, 14–15), and therefore cannot conclude that Otsuka has no need for the additional testimony.

For all of these reasons, Apotex's motion for a protective order will be denied. Moreover, because Dr. Buckton should not have been instructed not to answer questions related to the generic defendants' aripiprazole polymorph patents,[7] the Court will order the deposition of Dr. Buckton to be resumed for a period of no more than three (3) hours[8] at counsel for Otsuka's Washington, D.C. office.[9] Consequently, and for good cause shown,

IT IS this *25th* day of *September*, 2015, hereby.

**ORDERED** that Apotex's motion for a protective order [Docket Item 177] shall be, and hereby is, *DENIED*; and it is further.

**ORDERED** that Apotex shall produce Dr. Buckton for an additional deposition of no more than *three (3) hours* by no later than

---

6. The Court recognizes, however, that Dr. Buckton may take the position at his resumed deposition that he has no opinion on the generic defendants' aripiprazole polymorph patents, and that response, if true, would be appropriate.

7. Counsel for Otsuka may not, however, attempt to elicit testimony on patents other than those counsel attempted to question Dr. Buckton on during his initial deposition. In other words, this additional deposition will not afford counsel for Otsuka to introduce new patents and/or other materials.

8. This total time limitation includes Otsuka's questioning of Dr. Buckton concerning certain opinions in his responsive declaration as addressed by separate opinion and order of today's date.

9. Otsuka also requests that it be awarded its "fees and expenses" incurred in connection with its briefing, pursuant to Rules 30(d)(3)(A)-(B) and 37(a)(5), Fed. R. Civ. P. These rules collectively provide that the Court must, absent substantial justification, award reasonable attorneys' fees and expenses incurred in opposing an ultimately denied motion to enforce a deposition limitation. Here, however, because counsel for Otsuka attempted to elicit opinions from Dr. Buckton on topics that he hadn't previously discussed, and on patents not asserted in this case, the Court finds that substantial justification motivated Apotex's motion. For that reason, Otsuka's request for an award of attorneys' fees and expenses will be denied.

*October 10, 2015,*[10] and limited to questioning by Otsuka on the three aripiprazole polymorph patents and the responsive opinions identified in the Court's Memorandum Opinion and Order on Otsuka's motion to strike.

10. Counsel have advised that Dr. Buckton's deposition has been scheduled for September 30, 2015, three weeks before the Markman hearing.